IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SHEM AND MEREDITH MALMQUIST, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:10-cv-1014 |
| | ) | Magistrate Judge Bryant |
| METROPOLITAN GOVERNMENT OF | ) | |
| NASHVILLE and DAVIDSON COUNTY, | ) | |
| TENNESSEE and GERMANTOWN, | ) | |
| TENNESSEE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

By order entered April 11, 2011 (Docket Entry No. 26.), this civil action was reassigned to the docket of the magistrate judge for all further proceedings, pursuant to the consent of the parties. (Docket Entry No. 25.)

Plaintiffs Shem and Meredith Malmquist, residents of Germantown, Tennessee, filed this class action under 42 U.S.C. § 1983 and pursuant to Federal Rule of Civil Procedure 23 against the Metropolitan Government of Nashville and Davidson County, Tennessee, and against Germantown, Tennessee. (Docket Entry No. 1.) Plaintiffs seek both compensatory damages and injunctive relief. (Id.) Defendant Metropolitan Government of Nashville and Davidson County ("Metropolitan Government") has filed a motion to dismiss for failure to state a claim upon which relief can be granted. (Docket Entry No. 23.) Plaintiffs responded to this motion on April 28, 2011 (Docket Entry No. 33.), and defendant replied on May 10, 2011. (Docket Entry No. 37.)

1

As further explained below and by order entered contemporaneously herewith, defendant's motion to dismiss will be GRANTED.

**I. Factual Background**

Plaintiffs allege the following in support of their complaint.

On or about October 13, 2009, Shem Malmquist's ex-wife, Danielle Nicolosi, a Davidson County resident, swore out a warrant against plaintiffs Shem and Meredith Malmquist, alleging that the couple had sent her a letter in October, 2008, threatening to have her killed unless she left Memphis – where she apparently lived at the time – and never came back. (Docket Entry No. 1 ¶ 6.) In response to Ms. Nicolosi's allegations, Nashville/Davidson County judicial commissioners issued arrest warrants for Shem and Meredith Malmquist for domestic assault and assault, respectively. (Id. ¶¶ 7-8.) On October 28, 2009, Germantown police executed the warrants and arrested the plaintiffs in their Germantown, Tennessee home. (Id. ¶ 9.) Officers then held the plaintiffs in the Germantown Police Department until Davidson County police deputies arrived on October 29, 2009, to transport the plaintiffs back to Davidson County. (Id. ¶ 16.)

Upon arrival in Davidson County, the plaintiffs were separately presented via video conference to a county judicial commissioner for bail hearings. (Id. ¶ 17.) Plaintiff Shem Malmquist went first, and the commissioner offered him a choice between posting bail of $500 cash or $1000 through a bail bond service. (Id.) Mr. Malmquist chose to post $500 cash. (Id. ¶ 18.)

Plaintiff Meredith Malmquist then appeared via video conference before the same judicial commissioner, who offered her the same choice of $500 cash or $1000 through a bail

2

Case 3:10-cv-01014   Document 39   Filed 11/29/11   Page 2 of 19 PageID #: 168

bond service. (Id. ¶ 19.) After the commissioner informed her that Shem Malmquist had chosen the cash option, Meredith Malmquist elected to do the same. (Id.)

Shem Malmquist planned to post bail for himself and Meredith using his credit card. (Id. ¶¶ 22-23.) However, due to restrictions on the card, he was only able to use it once, to pay for Meredith's bail. (Id.) He then had to post his own bail through a bail bond service. (Id.)

Plaintiffs allege that the judicial commissioner never questioned either of them about the likelihood that they would flee or pose a danger to the community if released and never stated the reasons for the commissioner's bail determinations. (Id. ¶¶ 18-19, 21.) Plaintiffs further allege that judicial commissioners in Davidson County create no written record of the reasons for their bail determinations. (Id.)

The Metropolitan government ultimately dropped all charges against Shem and Meredith Malmquist. (Id. ¶ 25.)

Plaintiffs filed this complaint, alleging Eighth and Fourteenth Amendment claims for excessive bail and deprivation of liberty without due process of law on October 27, 2010. (Docket Entry No. 1.)

## II. Conclusions of Law

A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Although Federal Rule of Civil Procedure 8(a)(2) requires merely a "short and plain statement of the claim," the plaintiff must allege

3

enough facts to make the claim plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). He must plead well enough so that his complaint is more than a "formulaic recitation of a the elements of a cause of action." Id. at 555. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). Nevertheless, the court need not accept legal conclusions or unwarranted factual inferences as true, Iqbal, 129 S. Ct. at 1949-50; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987), and a complaint containing mere legal conclusions alone will "not unlock the doors of discovery for a plaintiff." Iqbal, 129 S. Ct. at 1950.

### B. Analysis of the Motion

Defendant Metropolitan Government seeks to dismiss plaintiff's complaint against it, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failing to state a claim upon which relief can be granted. (Docket Entry No. 23.) Specifically, defendant argues that plaintiffs' Eighth Amendment, substantive due process, and procedural due process claims all fail as a matter of law. (Id.) For the following reasons, the Court agrees with defendant's conclusions and finds that plaintiffs fail to state a claim upon which relief can be granted.

#### 1. Eighth Amendment Claim

The Eighth Amendment establishes that "[e]xcessive bail shall not be required." U.S. CONST. amend. VIII. While the Supreme Court has never explicitly found the Fourteenth Amendment to incorporate this prohibition against the states, it has assumed incorporation, Schilb v. Kuebel, 404 U.S. 357, 365 (1971), and the Middle District of Tennessee has followed

4

suit. Tate v. Hartsville/Trousdale County, 2010 WL 4054141, 3:09-0201, *5 (M.D. Tenn. Oct. 14, 2010).  The Court therefore assumes, without deciding, that defendant Metropolitan Government is bound by the requirements of the Bail Clause.

The first step in analyzing an excessive bail claim is determining what factor or factors make bail "excessive."  Though case law on this question is limited, several Supreme Court decisions provide guidance.  In Stack v. Boyle, 342 U.S. 1 (1951), the Court declared that the "function of bail is limited" and that "the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant." Id. at 5.  Standing alone, this language suggests that judicial officials may not consider any state interests other than assuring the accused's presence when setting bail.  But the Court rejected such a narrow reading in United States v. Salerno, 481 U.S. 739 (1987), specifically stating that judicial officials may pursue "other admittedly compelling interests through the regulation of pretrial release." Id. at 753.  The Court further held that the *only* substantive limit of the Bail Clause "is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." Id. at 754.  Of course, the problem with this rule is that it provides no meaningful guidance on *how* to quantify or balance these competing interests of the government and the individual.  That is especially true in cases such as this one, where the governmental excess – if any – is comparatively minor.  Compare Docket Entry No. 1 ¶ 23, plaintiffs made to post $500 cash bail or $1000 bond with Starkey v. Swenson, 370 F. Supp. 594, 596 (E.D. Mo. 1974) ("In effect, petitioner argues that fixing bail at $60,000 constitutes an abuse of discretion.").

The Court of Appeals for the Fifth Circuit confronted this same problem in Broussard v.

5

Parish of Orleans, 318 F.3d 644 (5th Cir. 2003). In that case, a class of plaintiffs challenged Louisiana's bail-fee statutes, which charged arrestees a nominal, fifteen dollar administrative fee over and above the amount of bail required. Id. at 648-49. Plaintiffs alleged that this statute deprived them of their fundamental right not to be unreasonably inhibited from exercising bail and failed to advance a compelling state interest. Id. In analyzing plaintiffs' claim, the Court of Appeals noted that the case did not fit easily under the Salerno balancing test, as neither the government interest nor the claimed injury were significant. Id. at 651. Ultimately, the court rejected plaintiffs' excessive bail claim, noting:

> Here, there is neither a compelling purpose nor a restriction on bail analogous to past instances. Rather there is *a largely theoretical, and effectively minimal,* constraint on an individual's substantial liberty interest in release. Nothing in these cases has suggested that a theoretically minor restriction imposed for less than a compelling purpose, constitutes "excessive" bail.

Id. at 651-52 (emphasis added).

While a $500 bail/$1000 bond is a greater financial burden than a $15 administrative fee, the plaintiffs in this case are nonetheless similar to the plaintiffs in Broussard, in that they claim an infringement on their liberty that is largely theoretical and that did not meaningfully limit their ability to secure pretrial release.

Instead of focusing on the amount of bail they had to pay, plaintiffs argue that the Salerno balancing test *necessarily* requires a case-by-case, individualized bail determination for each arrestee. (Docket Entry No. 33 at 2-3.) They similarly argue that "requiring bail in an amount higher than that which is individually calculated to serve as an assurance of the presence of a particular person . . . is excessive *per se.*" (Docket Entry No. 1 ¶ 38.) While plaintiffs do not frame their complaint in precisely these terms, they are effectively arguing that the Eighth

6

Amendment – like the Fourteenth Amendment – provides both substantive and procedural protections and that defendant has violated plaintiffs' procedural excessive bail rights.

The Middle District of Tennessee considered this exact issue in <u>Tate v. Hartsville/Trousdale County</u>, supra, 2010 WL 4054141, 3:09-0201 (M.D. Tenn. Oct. 14, 2010), and its opinion is instructive. In <u>Tate</u>, much like in the present case, a criminal suspect challenged his bail determination on grounds that he was never properly examined by the judicial commissioner. <u>Id.</u> at *2-*3. In analyzing the plaintiff's claim, this court determined that failure to examine the suspect prior to setting bail "does not show that the bail imposed was excessive." <u>Id.</u> at *7. The court further noted that it could not "assume that plaintiff's bail was excessive simply because the state failed to comply with some self-imposed procedural requirement." <u>Id.</u> (quoting <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 662 (9th Cir. 2007)). The plaintiff in <u>Tate</u> did "not seriously dispute the notion that his own bond amount was not excessive," <u>Id.</u> at 5, and he therefore failed to present a viable Eighth Amendment argument. Although the bail issue in <u>Tate</u> came to the district court on a motion for summary judgment, rather than a motion to dismiss, the Court finds its reasoning to be sound and its legal conclusions applicable to the facts alleged by plaintiffs here, presumed true for these purposes.

Like the plaintiffs in <u>Tate</u>, Shem and Meredith Malmquist do not assert that defendant set their bail at a *substantively* unreasonable amount. Instead, they claim that defendant's procedures were completely arbitrary, "based on some mysterious rule of thumb" (Docket Entry No. 1 ¶ 18.), and that the bail determination was therefore "excessive *per se*." (<u>Id.</u> ¶ 38.) However, to make out a § 1983 claim for a Bail Clause violation, the plaintiff must show more than some generalized procedural defect; he must allege that *his own* bail was actually excessive.

7

The language of Stack supports this view. Specifically, the Supreme Court concluded that "[i]f bail *in an amount greater than that usually fixed* for serious charges of crimes is required in the case of any of the petitioners, that is a matter to which evidence should be directed in a hearing so that the constitutional rights of each petitioner may be preserved." 342 U.S. at 6 (emphasis supplied). This conditional language suggests that an excessive bail claim can never be purely procedural. The bail amount must, at a minimum, be "greater than that" usually set for a particular offense.

Plaintiffs make no such allegation.[1] Instead, they draw the Court's attention to a Ninth Circuit decision, United States v. Scott, (Docket Entry No. 33 at 3-4.) where the court stated that for some minor infractions, when flight by the defendant would be "irrational," bail serves no purpose and "*any* amount of bail may be excessive." 450 F.3d 863, 867 n.5 (9th Cir. 2006). Scott, however, is inapposite. The case addressed the constitutionality of forcing a defendant to consent to random police searches as a condition of his release, addressing monetary bail only tangentially and in dicta contained within a footnote. Id. at 865-67, n.5. Furthermore, the court's example for when any amount of bail would be unconstitutional was a "minor traffic infraction." Id. at 867 n.5.

Shem and Meredith Malmquist were not charged with minor traffic infractions; they were charged with domestic assault and assault, respectively. (Id. ¶¶ 7-8.) Plaintiffs do not assert that

---

[1] In fact, statistics the plaintiffs cite in their complaint appear to undermine their excessive bail claim. They assert that in Nashville/Davidson County, between October 2009 and April 2010, approximately 50% of individuals arrested for domestic assault-fear of bodily injury had bail set at $1500 or less. (Docket Entry No. 1 ¶ 26.) During the same period, roughly 37% of individuals arrested for assault-non domestic -fear of bodily injury had bail set at $1500 or less. (Id.) Based on these statistics, plaintiffs' bail – set at $500 cash or $1000 bond – does not appear out of the ordinary.

8

requiring bail is *inherently* unconstitutional for these offenses. Nor do they assert that their own $500 cash bail and $1000 bond were excessive in relation to the charges against them. Instead, they seek to establish excessive bail from defendant's allegedly deficient procedures. (Docket Entry No. 1 ¶ 38.)

In line with Tate, the Court finds that these allegations fail to state an Eighth Amendment claim of excessive bail. See also Mastrian v Hedman, 326 F.2d 708, 711 (8th Cir. 1964) ("Bail in the sum of $100,000 on a first degree murder charge is not, as petitioner contends, necessarily arbitrary or discriminatory in his situation because it is more in amount than the trial court generally has required in murder cases.").

Accordingly, the Court finds that defendant's motion to dismiss plaintiffs' Eighth Amendment claims is well taken. Because the Court finds plaintiffs' pleading of this claim insufficient as a matter of law, there is no need to address defendant's argument that plaintiff's Eighth Amendment claim would fail on the merits. (Docket Entry No. 24 at 8.)

### 2. Substantive Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. Under this clause, the Supreme Court has recognized certain rights to be "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325 (1937), and has held that any state action infringing upon such rights is subject to strict judicial scrutiny. Zablocki v. Redhail, 434 U.S. 374, 388 (1978). It is not disputed that the "general existence of a right to bail" is one such fundamental right. Atkins v. Michigan, 644 F.2d 543, 549 (6th Cir. 1981).

9

Plaintiffs allege that defendant, "by instituting and approving a system where bail is set based on something other than the statutory elements or an individualized determination of the need for bail," has arbitrarily and unconstitutionally infringed their liberty. (Docket Entry No. 1 ¶ 29.)

At the outset, plaintiffs and defendant vigorously dispute whether substantive due process under the Fourteenth Amendment provides any ground for relief independent of the Eighth Amendment protection against excessive bail. (Docket Entry No. 24 at 9; Docket Entry No. 33 at 15-16.) Defendant draws the Court's attention to United States v. Lanier, 520 U.S. 259 (1997), where the Supreme Court stated that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision." Id. at 272 n.7. Relying on this language, defendant asserts that plaintiffs' claims fall under the aegis of the Eighth Amendment and are therefore "not cognizable under a substantive due process theory." (Docket Entry No. 24 at 9.)

Plaintiffs counter that the defendant has "take[n] a rule of law declared under a certain context and spread it beyond its contours to another context beyond the border of the original ruling." (Docket Entry No. 33 at 16.) They note that Lanier only addressed the overlap issue briefly, in a footnote near the end of the opinion, Lanier 520 U.S. at 272 n.7, citing to the excessive force case Graham v. Connor, 490 U.S. 386 (1989). Graham, in turn, discussed only the Eighth Amendment prohibition against cruel and unusual punishment, *not* the prohibition against excessive bail. Id. at 394. Plaintiffs conclude from this chain of authority that Lanier was never meant to govern excessive bail cases, and that plaintiffs may therefore pursue their

10

claims under both Eighth Amendment and substantive due process theories.

This Court cannot agree. While plaintiffs may be correct to read Graham narrowly, it was the United States Supreme Court, rather than the defendant in this case, that chose to adopt a broader constitutional rule. In Collins v. City of Harker Heights, Texas, the Supreme Court declared that "[a]s a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended." 503 U.S. 115, 125 (1992). Similarly, in County of Sacramento v. Lewis, the Supreme Court – citing both Graham and Lanier – held that a plaintiff's substantive due process claim is inappropriate if that claim is "covered" by another amendment. 523 U.S. 833, 843 (1998). The Lewis Court approvingly quoted the language from Lanier that "if a constitutional claim is covered by a specific constitutional provision, *such as* the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision." Id. (quoting Lanier, 520 U.S. at 272 n.7) (emphasis supplied). While plaintiffs are correct that none of these decisions expressly address the relationship between substantive due process and the Excessive Bail Clause, the language of the opinions suggests that the rule is meant to be applied broadly, rather than restricted to the realm of excessive force and cruel and unusual punishment. The question, then, is whether the Eighth Amendment fully "covers" plaintiffs' substantive due process claim, or whether the alleged acts of the Metropolitan Government infringed on any other fundamental rights.

Plaintiffs assert that defendant's actions violate their fundamental right to bail pending trial. They cite Puertas v. Michigan Department of Corrections, 88 F. Supp. 2d 775, 781 (E.D. Mich. 2000) for the existence of this right, and then ask, "How can it be any more clear than

11

this?" (Docket Entry No. 33 at 16.)  But plaintiffs' confidence is misplaced.  Puertas addressed the outright *denial* of bail, not the setting of *excessive* bail.  Id.  Similarly, in Atkins v. Michigan – a decision the Puertas court cited heavily – the Sixth Circuit held that "if [a defendant's] liberty is to be *denied*, it must be done pursuant to an adjudicatory procedure that does not violate the standards for due process established by the fourteenth amendment."  644 F.2d 543, 550 (6th Cir. 1981) (emphasis supplied).

Here, plaintiffs conflate two distinct rights governed by distinct constitutional provisions.  There is broad agreement that the arbitrary *denial* of bail and requiring the detention of suspects pending trial is a deprivation of liberty redressible under the Fourteenth Amendment.  Id. at 458; see also Mastrian v. Hedman, 326 F.2d 708, 710 (8th Cir. 1964) ("[I]t is inherent in our American concept of liberty that a right to bail shall generally exist.").  There is also some support for the idea that bail, under certain circumstances, might be set so far above what a defendant can afford that it constitutes the effective denial of pretrial release.  See Pugh v. Rainwater, 572 F.2d 1053, 1056 (5th Cir. 1978) ("[W]e accept the principle that imprisonment solely because of indigent status is invidious discrimination and not constitutionally permissible.").

Plaintiffs, however, make no such claim.  According to plaintiffs' own complaint, the Metropolitan Government allowed Shem and Meredith Malmquist to post bail and then released them.  (Docket Entry No. 1 ¶¶ 18-19, 23-24.)  Plaintiffs cannot make out a claim for arbitrary denial of bail under the Fourteenth Amendment for the simple reason that *they were never denied bail.*  The Court therefore agrees with defendant that plaintiffs' substantive claims fall under the aegis of the Eighth Amendment Excessive Bail Clause, and finds that defendant's motion to

12

dismiss plaintiffs' substantive due process claim is well taken.

### 3. Procedural Due Process

Plaintiffs' procedural due process claim fails for much the same reason as its substantive due process claim.

In Mathews v. Eldridge, 424 U.S. 319 (1976), the Supreme Court noted that procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." Id. at 332. Plaintiffs assert that because of the Metropolitan Government's actions, plaintiffs "had their Constitutional rights against the setting of excessive bail and against having their liberty deprived without due process of law violated." (Docket Entry No. 1 ¶ 39.) However, for the reasons described above, the Court concludes that plaintiffs' bail was *not* excessive and that plaintiffs were *not* deprived of their physical liberty. In the absence of any infringement on these substantive rights, plaintiffs cannot, as a matter of law, make out a § 1983 claim for violation of procedural due process. See Monk v. Huston, 340 F.3d 279, 282-83 (5th Cir. 2003) ("The constitutional right to due process is not, however, an abstract right to hearings conducted according to fair procedural rules. Rather, it is the right not to be deprived of life, liberty, or property without such procedural protections.").

Plaintiffs allege that the Metropolitan Government violated their procedural due process rights by failing to adhere to Tennessee state statutes governing bail and pretrial release. (Docket Entry No. 1 ¶¶ 30, 35; Docket Entry No. 33 at 19-20.) However, this circuit has expressly held that violation of a state statute does not, in and of itself, give rise to a cause of action under §1983. White by Swafford v. Gerbitz, 892 F.2d 457, 461 (6th Cir. 1989). Instead,

13

a plaintiff must establish "that a defendant violated his *federally* protected rights under color of state law." Id. Furthermore, as this court noted in Tate, "'[t]he Constitution does not require states to administer their laws correctly' and 'it is not appropriate for a federal court, hearing a case under §1983 to upbraid state officials for a supposed error of state law.'" 2010 WL 4054141, *8 (M.D. Tenn. Oct. 14, 2010) (quoting Burgess v. Ryan, 996 F.2d 180, 184 (7th Cir. 1993)).

However, plaintiffs contend that they have suffered a substantial deprivation of rights without due process, since rights arising under the constitution or statutes of Tennessee are "protected liberty interests under the 14th Amendment due process clause that may not be taken away arbitrarily or in a discriminatory fashion." (Docket Entry No. 33 at 9.) Plaintiff is correct that states "may, under some circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 462 (1989) ("[T]he most common manner in which a State creates a liberty interest is by establishing substantive predicates to govern official decision-making, and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met." (internal quotations omitted)). However, state *procedures* – even those mandated by state law – do not, in and of themselves, give rise to any rights enforceable under § 1983. As the Sixth Circuit noted in Gibson v. McMurray, "[state p]rocedural rights that do not require a particular substantive outcome are not liberty interests protected by the Fourteenth Amendment, even if the right is 'mandatory.'" 159 F.3d 230, 233 (6th Cir. 1998).

Plaintiffs allege that their state-created liberty interest arises from T.C.A. §§ 40-5-101, 40-5-103, and 40-11-114 through 40-11-118. The fifth chapter of Title 40, pertaining to

14

Case 3:10-cv-01014 Document 39 Filed 11/29/11 Page 14 of 19 PageID #: 180

"Magistrates and Judicial Commissioners," states in pertinent part as follows:

> **40-5-103. Examination required before commitment.** – No person can be committed to prison for any criminal matter until examination thereof is first had before some magistrate.
>
> **40-5-105. Disposition by magistrate.** – The magistrate is required to reduce the examination of the accused to writing, if the accused submits to an examination, and also all the evidence adduced on both sides, and is authorized to discharge, bail, or commit the accused and to take all necessary recognizances to enforce the appearance of the defendant, the prosecutor or witnesses at the proper court.

Plaintiffs argue that these provisions apply to all arrestees, including those such as themselves, who were not denied bail and committed to prison, but were only held temporarily for purposes of making their initial appearance before the county commissioner. The Court finds this argument rebutted by the plain language of § 40-5-103, which only requires an examination reduced to writing prior to *jailing* the arrestee. See also Tenn. R. Crim. P. 5.1(b). Following their initial appearance before a magistrate, plaintiffs here were admitted to bail, not committed to jail. Their temporary detention for reasons attendant to their transport, appearance before the commissioner, and posting of bail, is not a committal to prison for purposes of these statutes. E.g., Wynn v. State, 181 S.W. 2d 332, 334 (Tenn. 1944). Moreover, it does not appear from the complaint that the case against plaintiffs proceeded to the preliminary examination stage, where probable cause to believe the arrestee committed the charged offense is determined and the criminal defendant is "either release[d] . . . pursuant to applicable law or commit[ted] . . . to jail by a written order." Tenn. R. Crim. P. 5.1(b). Rather, under Tennessee Rule of Criminal Procedure 5, the proceedings described in the complaint were initial appearances before a magistrate, conducted by audio-visual device as authorized under Rule 43(e).[2] "Nothing in the

---

[2] Rule 5(a)(1)(A), in pertinent part, provides that "Any person arrested . . . shall be taken without unnecessary delay before the nearest appropriate magistrate of the county from which the arrest warrant

15

Rules of Criminal Procedure or the state or federal constitutions prohibit a temporary incarceration of a person arrested [with or] without a warrant prior to the initial appearance," provided that the initial appearance takes place "without unnecessary delay." Tenn. Op. Att'y Gen. No. 91-84, 1991 WL 535160, at *1 (Sept. 20, 1991).

As further support for their assertion that a written record must be made of their bail setting, plaintiffs cite T.C.A. § 40-11-114, which provides, in pertinent part:

> Bail, when not given in open court, is given by a **written undertaking**, containing the conditions of release, the agreement of the defendant to appear in the court having jurisdiction of the offense as directed by the court and/or an amount to be paid for nonappearance, **signed by the defendant**, and if made under § 40-11-122(2), signed also by court-approved and sufficient surety or sureties. The written undertaking must be approved by the officer taking it.

(Emphasis in plaintiffs' brief). However, this section does not refer to any writing required of the magistrate upon the setting of bail, but instead describes the writing that is required to effect bail of a criminal defendant when bail is not made upon a recognizance in open court.

Plaintiffs further argue that, under §§ 40-11-115 through 40-11-117, "[t]he *default* is release on one's own recognizance and bail may be required *only* '**absent a showing** that conditions on a release on recognizance will reasonably assure the appearance of the defendant as required.'" (Docket Entry No. 33 at 8 (quoting T.C.A. § 40-11-117)) (emphasis in plaintiffs' brief). While release on personal recognizance may well be the presumptive form of release under this statutory scheme, plaintiffs' citation of § 40-11-117 is misleading. The statute provides, in full, as follows:

---

issued[.]" To the extent that this procedure conflicts with plaintiffs' right as out-of-county arrestees to be admitted to bail in the county of arrest, see Tenn. R. Crim. P. 4(d), the Court finds that such matters of procedure do not give rise to any protected liberty interest implicating plaintiff's federal due process rights.

16

> **40-11-117. Bail security required.** – Absent a showing that conditions on a release on recognizance will reasonably assure the appearance of the defendant as required, the magistrate shall, in lieu of the conditions of release set out in § 40-11-115 or § 40-11-116, require bail to be given.

This section does not limit the magistrate's discretion in deciding when bail "may" be required as plaintiffs assert, but mandates that bail <u>shall</u> be ordered given unless other, nonpecuniary conditions on the release from confinement are shown to be reasonably certain to assure the defendant's appearance at trial. There was no such showing in plaintiffs' case, albeit because there was allegedly no inquiry into their suitability for release on recognizance. While such lack of inquiry may be inconsistent with the spirit of §§ 40-11-115 through 40-11-117, the letter of the law does not mandate that arrestees be released on recognizance absent a showing that only payment of bail will assure their attendance at trial. In fact, statutory language suggests the inverse. <u>See</u> T.C.A. § 40-11-115(a) ("Any person charged with a bailable offense **may**, before a magistrate authorized to admit the person to bail, be ordered released pending trial on the person's personal recognizance.") (emphasis supplied); § 40-11-116 ("If a defendant does not qualify for a release upon recognizance under § 40-11-115, then the magistrate shall impose the least onerous conditions reasonably likely to assure the defendant's appearance in court. . . . including, but not limited to, the deposit of bail."); § 40-11-117 ("Absent a showing that conditions on a release on recognizance will reasonably assure the appearance of the defendant as required, the magistrate shall . . . require bail to be given."). The Court finds that the implication or presumption from these statutes that release on personal recognizance should be considered and rejected before bail is required to be given is not sufficient to create a liberty interest protected under the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Kentucky Dep't of Corr. v. Thompson</u>, <u>supra</u>.

17

Case 3:10-cv-01014   Document 39   Filed 11/29/11   Page 17 of 19 PageID #: 183

Finally, the Court notes that plaintiffs' interpretation of Tennessee Attorney General Opinion 05-018 – cited for the proposition that a magistrate's "use of a 'pre-set bond schedule' is specifically prohibited" (Docket Entry No. 33 at 7.) – is not supported by the language of that opinion. The actual opinion states that Tennessee's statutory scheme requires an individual determination of bond by a magistrate, judge, or, in limited circumstances, the court clerk. Accordingly, the opinion states that, where arrests are made at times when a judge or clerk is not readily available (such as on nights and weekends), a *jailer* may not utilize a pre-set bond schedule published by judges in the jurisdiction, but must instead hold the arrestee pending the judge or clerk's availability. 2005 WL 436219, at *1-2. The Court finds no authority in this Attorney General opinion or elsewhere in state law for any blanket prohibition against a magistrate beginning the bail determination process with a default amount corresponding to the particular charge of arrest – or ending with that same amount – when setting bail in the exercise of his or her discretion, according to the factors and directives set out in T.C.A. § 40-11-118. Therefore, plaintiffs cannot claim a constitutional deprivation for the manner in which defendant set their bail in this case. See Tate, 2010 WL 4054141, at *7.

In light of the foregoing, the Court finds that plaintiffs' claim that the Metropolitan Government failed to observe Tennessee law in setting their bail fails to state a claim under the Fourteenth Amendment on which relief can be granted.

Accordingly, the Court concludes that defendant's motion to dismiss plaintiffs' procedural due process claim is well taken.

### III. Conclusion

In light of the foregoing, defendant Metropolitan Government of Nashville/Davidson

18

Case 3:10-cv-01014 Document 39 Filed 11/29/11 Page 18 of 19 PageID #: 184

County's motion to dismiss shall be GRANTED, and the claims against it DISMISSED.  An appropriate order will enter.

**ENTERED** this 29th day of November, 2011.

                                                          s/_____
                                                          JOHN S. BRYANT
                                                          UNITED STATES MAGISTRATE JUDGE