IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SHEM AND MEREDITH MALMQUIST,　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　　　No. 3:10-cv-1014
　　　　　　　　　　　　　　　　　　　)　　　　Magistrate Judge Bryant
METROPOLITAN GOVERNMENT OF　　　　　)
NASHVILLE and DAVIDSON COUNTY,　　　)
TENNESSEE and GERMANTOWN,　　　　　　)
TENNESSEE,　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　)


**MEMORANDUM**

By order entered April 11, 2011 (Docket Entry No. 26), this civil action was reassigned

to the docket of the magistrate judge for all further proceedings, pursuant to the consent of the

parties. (Docket Entry No. 25).

Plaintiffs Shem and Meredith Malmquist, residents of Germantown, Tennessee, filed this

class action under 42 U.S.C. § 1983 and pursuant to Federal Rule of Civil Procedure 23 against

the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro

Government"), and against Germantown, Tennessee. (Docket Entry No. 1.)  Plaintiffs seek both

compensatory damages and injunctive relief.  (Id). By order entered on November 29, 2011, the

Court dismissed all claims against  Defendant Metropolitan Government (Docket Entry No. 40),

leaving Germantown as the sole remaining defendant.

On November 1, 2011, Defendant Germantown, Tennessee also filed a motion to dismiss

for failure to state a claim (Docket Entry No. 38), incorporating by reference the arguments set

1

forth in Metro Government's motion to dismiss, supporting memorandum, and reply to

plaintiffs' response. (Docket Entry Nos. 23, 24 & 37). Plaintiffs responded to this motion on

December 12, 2011.[1] (Docket Entry No. 43).

As further explained below and by order entered contemporaneously herewith,

defendant's motion to dismiss will be GRANTED.

## I. Factual Background

Plaintiffs allege the following in support of their complaint:

On or about October 13, 2009, Shem Malmquist's ex-wife, Danielle Nicolosi, a Davidson

County resident, swore out a warrant against plaintiffs Shem and Meredith Malmquist, alleging

that the couple had sent her a letter in October 2008, threatening to have her killed unless she left

Memphis — where she apparently lived at the time — and never came back. (Docket Entry No.

1 ¶ 6). In response to Ms. Nicolosi's allegations, Nashville/Davidson County judicial

commissioners issued arrest warrants for Shem and Meredith Malmquist for domestic assault

and assault, respectively. (Id. ¶¶ 7-8). On October 28, 2009, Germantown police executed the

warrants and arrested the plaintiffs in their Germantown, Tennessee, home. (Id. ¶ 9). Officers

did not admit plaintiffs to bail at that time. Instead, they held the plaintiffs at the Germantown

Police Department until Davidson County police deputies arrived on October 29, 2009, to

transport the plaintiffs back to Davidson County. (Id. ¶ 16). Plaintiffs claim that Germantown's

refusal to admit plaintiffs to bail *in Germantown* violated state law that "out of county arrestees

have a right to be admitted to bail the same as in county arrestees." (Id. ¶ 11). While the

---

[1] While plaintiffs' response was not timely, the Court nonetheless granted plaintiffs' motion for leave to file a response, (Docket Entry No. 42), as Defendant Germantown raised no objection.

2

complaint does not specifically cite to the provision, plaintiffs appear to be referring to TENN.

CODE ANN. § 40-11-147, which states that:

> A defendant arrested in one county on a warrant issued in another county for the commission of an offense for which the maximum punishment is imprisonment for ten (10) years or less is entitled to be admitted to bail in the county of arrest by the same officials and in the same manner as if arrested in the county issuing the warrant.

Plaintiffs filed this complaint, alleging Eighth and Fourteenth Amendment claims for excessive bail and deprivation of liberty without due process of law, on October 27, 2010. (Docket Entry No. 1.)

## II. Discussion

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Although FED. R. CIV. P. 8(a)(2) requires merely a "short and plain statement of the claim," the plaintiff must allege enough facts to make the claim plausible. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). He must plead well enough so that his complaint is more than a "formulaic recitation of the elements of a cause of action." Id. at 555. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). Furthermore, the court need not accept legal conclusions or unwarranted factual inferences as true, Iqbal, 129 S. Ct. at 1949-50; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.

3

1987), and a complaint containing mere legal conclusions alone will "not unlock the doors of

discovery for a plaintiff." Iqbal, 129 S. Ct. at 1950.


        B. Analysis of the Motion

        Defendant Germantown seeks to dismiss plaintiffs' complaint against it, pursuant to

Federal Rule of Civil Procedure 12(b)(6), for failing to state a claim upon which relief can be

granted. (Docket Entry No. 38). Specifically, defendant asserts — incorporating the arguments

of defendant Metro Government — that plaintiffs' Eighth Amendment, substantive due process,

and procedural due process claims all fail as a matter of law. Id. While there are meaningful

differences between plaintiffs' claims against Metro Government and their claims against

Germantown, the Court nonetheless agrees with defendant's conclusions and finds that plaintiffs

fail to state a claim upon which relief can be granted.


        **1. Eighth Amendment Claim**

        Plaintiffs' excessive bail claim against Germantown fails for the simple reason that

officials in Germantown *never set* plaintiffs' bail. Plaintiffs and defendant are in complete

accord that plaintiffs were not admitted to bail until they arrived in Nashville. (Compare Docket

Entry No. 1 at 2 ("They [Mr. and Mrs. Malmquist] were held in the Germantown Police

Department without bail awaiting transport to Davidson County.") with Docket Entry No. 38 at 1

("As the Complaint admits . . . Plaintiffs' bail was not set in Germantown, Tennessee.")).

        While the United States Constitution protects against the arbitrary denial of bail — which

is what plaintiffs are really alleging here — that protection arises out of the Fourteenth

4

Amendment's Due Process Clause, not the Eighth Amendment's Excessive Bail Clause. See, e.g., Atkins v. Michigan, 644 F.2d 543, 549 (6th Cir. 1981) ("[A]lthough this issue concerns the right to liberty on bail pending trial, this is not an eighth amendment case.").

Furthermore, to the extent that plaintiffs challenge Germantown's broader bail-setting policies, those claims must fail for lack of standing. For example, plaintiffs assert that bail or bond for certain charges, such as failure to appear, are preset in Germantown, such that the arresting officer will not even contact a magistrate to conduct a bail hearing. (Docket Entry No. 1 ¶ 12). They further assert that municipal judges in Germantown do not consider the appropriate statutory factors when setting bail, (id. ¶ 10), and that the Germantown police department transfers detainees to the Shelby County jail if the county issuing the arrest warrant cannot pick the suspect up within three days. (Id. ¶ 13). Plaintiffs, however, do not allege that they were arrested for failure to appear, that Germantown set their bail according to any preset schedule, or that the Germantown Police Department held them for more than three days.

The Supreme Court has emphasized that a plaintiff cannot establish standing simply by showing that a defendant's conduct will injure *someone*. Blum v. Yaretsky, 457 U.S. 991, 999 (1982). Instead, the plaintiff must show that he "is within the class of persons who will be concretely affected." Id. Furthermore, "'a plaintiff must demonstrate standing for *each claim* he seeks to press' and 'for each form of relief' that is sought," Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006)) (emphasis supplied); see also Rosen v. Tenn. Comm'r of Fin. & Admin., 288 F.3d 918, 928 (6th Cir. 2002) ("It is black-letter law that standing is a claim-by-claim issue." ).

Because Germantown never admitted plaintiffs to bail, the city's customs and policies for

how to set the *amount of bail* had no bearing on the plaintiffs. Put simply, Shem and Meredith

Malmquist were not within the class of persons "concretely affected" by those policies.[2]

Accordingly, defendants' motion to dismiss will be GRANTED with respect to plaintiffs'

Eighth Amendment claim against Germantown.

### 2. Substantive Due Process Claim

In their complaint, plaintiffs explicitly raise both substantive and procedural due process

claims against defendant Germantown. Specifically, with regard to their substantive due process

claim, plaintiffs assert that Germantown violated "[t]he right against arbitrary infringement of

liberty as guaranteed by the due process clause of the 14th Amendment (substantive due

process)." (Docket Entry No. 1 ¶ 40(b)). In another filing, plaintiffs explain that their

substantive due process claim "is based on the simple, but eluding, argument that *state law*

provides arrestees a "right" to be presumed eligible for ROR [release on recognizance], a 'right'

to be examined by a judicial commissioner who must consider certain statutory factors, and a

'right' not to have bail set by how it will be posted." (Docket Entry No. 33 at 14) (emphasis

supplied).[3] To the extent plaintiffs rely on state-created liberty interests, they confuse the

---

[2] For the purpose of determining standing, it does not matter that Shem and Meredith Malmquist seek to represent a class of similarly situated individuals. (Docket Entry No. 1 ¶ 40). Independent of any issues under FED. R. CIV. P. 23 regarding commonality or typicality, plaintiffs must demonstrate that at least one named plaintiff has standing to raise *each claim* asserted against the defendants. See, e.g., Prado-Steinman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.").

[3] The Court notes that plaintiffs made this statement in response to Metro Government's motion to dismiss. However, Germantown has explicitly incorporated Metro's arguments into its own motion to

6

elements of  procedural due process claims for those of substantive due process.

As Justice Powell explained in Regents of University of Michigan v. Ewing, "substantive due process rights are created only by the Constitution." 474 U.S. 214, 229 (1985) (Powell, J., concurring). The Sixth Circuit has further noted that substantive due process claims fall into two basic categories: (1) claims asserting the denial of a right, privilege, or immunity secured by the *U.S. Constitution* or *federal statute*; or (2) official conduct that "shocks the conscience" of the court.  Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 724 (6th Cir. 1996) (emphasis supplied).  In plaintiffs' response to Metro Government's motion to dismiss, (Docket Entry No. 33) — incorporated into their current response to Germantown's motion to dismiss — plaintiffs expressly claim that "they have never made a 'shock the conscience' claim." (Docket Entry No. 33 at 14).  The Court, however, need not decide this issue, as plaintiffs fail to state a claim under either of the two Lillard categories.

The Supreme Court has established that delay in processing a criminal suspect can sometimes rise to the level of a constitutional violation.  In Gerstein v. Pugh, for example, the Court held that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention[.]" 420 U.S. 103, 126 (1975). In the follow up case, County of Riverside v. McLaughlin, the Court explained that a jurisdiction "that provides judicial determination of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." 500 U.S. 44, 56 (1991).  While Gerstein and McLaughlin analyzed delay in the context of warrantless arrests challenged under the Fourth

---

dismiss, (Docket Entry No. 38 at 1), and plaintiffs have explicitly incorporated their response to Metro's motion into their current response to Germantown. (Docket Entry No. 43 at 1).

7

Amendment, the Sixth Circuit has explicitly recognized a comparable Fourteenth Amendment right for pretrial detainees arrested on facially valid warrants. Gray v. Cuyahoga County Sheriff's Dept., 150 F.3d 579, 583 (6th Cir. 1998) (noting that while federal courts "at times speak in terms of a variety of Constitutional provisions, it appears to us more precise to follow the language of the Supreme Court in Baker and inquire whether a detention of this length will deprive the accused of 'liberty without the due process of law.'") (quoting Baker v. McCollan, 443 U.S. 137, 145 (1979)); see also Hayes v. Faulkner County, Ark., 388 F.3d 669, 673 (8th Cir. 2004); Armstrong v. Squadrito, 152 F.3d 564, 569-70 (7th Cir. 1988).

From the case law above, it is clear that pretrial detention without a bail hearing will, after a certain amount of time, violate a detainee's right to liberty under the U.S. Constitution. But it is equally clear that Germantown's refusal to admit Shem and Meredith Malmquist to bail did not violate their right to substantive due process.  According to the complaint, Germantown Police arrested the Malmquists on October 28, 2009, and Davidson County deputies picked them up from the police station in the "early morning hours" of October 29, 2009. (Docket Entry No. 1 at 9, 16).  While the complaint is less specific about the timing of events in Nashville, plaintiffs do not assert that they were held there overnight.  Accordingly, it does not appear that plaintiffs were in custody any longer than 48 hours.

In Baker v. McCollan, the Supreme Court noted that it was "quite certain that a detention of three days over a New Year's weekend does not and *could not* amount to such a deprivation [of liberty]."  443 U.S. at 145 (emphasis supplied).  Applying the standard from Baker, the Sixth Circuit similarly concluded that a four and a half day detention did not violate due process. Flemister v. City of Detroit, 358 Fed. App'x 616, 621 (6th Cir. Dec. 18. 2009) ("We find . . . that

8

this case is materially indistinguishable from <u>Baker</u>, and are compelled to conclude that plaintiff

cannot establish a constitutional deprivation of liberty without due process of law.").

Both <u>Baker</u> and <u>Flemister</u> arose from cases of mistaken identity and are arguably

distinguishable on the facts from the present suit.[4] However, there is no logical reason that Shem

and Meredith Malmquist — who were *properly* arrested pursuant to a valid warrant — should be

entitled to any greater expectation of liberty than the <u>Baker</u> and <u>Flemister</u> plaintiffs — who were

*improperly* arrested pursuant to facially valid warrants. <u>See</u> <u>also</u> <u>Fletcher v. Cleveland</u>, 2010

WL 2572874, No. 109 CV 1925, at *4 (N.D. Ohio June 23, 2010) ("The U.S. Supreme Court and

Sixth Circuit have held that detentions as long as three or four days are considered insufficient to

amount to a violation of the Constitution."). Accordingly, the Court concludes that plaintiffs

cannot make out a claim for violation of substantive due process under the Fourteenth

Amendment, and that defendant's motion to dismiss will be GRANTED with respect to this

claim.


### 3. Procedural Due Process

The final, and strongest, of plaintiffs' three claims is that Germantown violated plaintiffs'

procedural due process rights by failing to adhere to Tennessee state law.

The Supreme Court has emphasized that states "may under certain circumstances create

liberty interests which are protected by the Due Process Clause." <u>Sandin v. Connor</u>, 515 U.S.

---

[4] In <u>Baker</u>, a man falsely identified himself as his brother when the police arrested him, leading the police to arrest the brother when a warrant was later issued. <u>Baker</u>, 443 U.S. at 141. <u>Flemister</u> involved a similar set of facts, with a man identifying himself as his cousin when arrested and the cousin later being arrested on a warrant when the man failed to appear for his arraignment. <u>Flemister</u>, 358 Fed. App'x at 617-18.

9

472, 484-85 (1995).  State laws, however, do not automatically give rise to federally enforceable

rights.  In particular, "[s]tate-created procedural rights that do not guarantee a particular

substantive outcome are not protected by the Fourteenth Amendment, even where such

procedural rights are mandatory."  Tony L by and through Simpson v. Childers, 71 F.3d 1182,

1185 (6th Cir. 1995).  To determine whether state law creates a liberty interest, the court must

determine (1) whether the state has used "explicitly mandatory" language and substantive

predicates, and (2) whether the state has mandated particular substantive outcomes if those

predicates are met.  Gibson v. McMurray, 159 F.3d 230, 233 (6th Cir. 1998).

In their complaint, plaintiffs point to ten different liberty interests that they claim arise

from Tennessee law:

> (a) The right to bail as guaranteed by Article 1, Section 15 and 16 of the
> Tennessee Consitution;
>
> (b) The right to bail by even those arrested for violations of conditions of bail
> previously set (Failure to Appear or capias warrants);
>
> (c) The right of persons arrested on out-of-county warrants to be admitted to bail
> in the county of arrest in the same manner as anyone else arrested in that county;
>
> (d) the right to be examined by a magistrate for the purpose of determining the
> need for bail before being committed to jail;
>
> (e) The right against having bail conditioned on the type of bond, such as cash
> bond, secured bond, or other type;
>
> (f) The right to be held for 12 hours without bail on domestic assault arrests only
> after a determination that the alleged victim is in danger.
>
> (g) The right to have bail set by a judicial commissioner, magistrate, or clerk of
> court without unreasonable delay;
>
> (h) The right to have the reasons for bail reduced to writing;
>
> (i) The right to be released on one's own recognizance (ROR) as a default release

10

unless an examining magistrate concludes there is a risk of flight on an individualized basis;

(j) The right to have bail set on an individualized basis of the particular person's likelihood to flee or be a danger rather than on a pre-set bond schedule or bail set by some arbitrary rule of thumb or mysterious formula.

(Docket Entry No. 1 ¶ 41).

At the outset, and for the reasons noted above, plaintiffs have no standing to base their claims on items (b), (d), (e), (h), (i) or (j). These asserted liberty interests pertain to the *manner* in which local governments set bail. They have no bearing on plaintiff's claim that Germantown refused to admit plaintiffs to bail in the first place, and instead turned plaintiffs over to deputies from Davidson County.

Item (a) is similarly unavailing. Article I, section 16 of the Tennessee Constitution contains the state's prohibition against excessive bail or fines. This language — establishing that "excessive bail shall not be required, nor excessive fines imposed" — is identical to its federal counterpart, and is similarly inapplicable to the facts at hand. Article I, section 15, in turn, establishes that all prisoners "shall be bailable by sufficient sureties." Nothing in this section requires *immediate* bail or prohibits police from transporting detainees to the county issuing the arrest warrant before admitting them to bail. Accordingly, the Court finds that this language fails to set forth any particular substantive outcome and thus fails under McMurray's second prong.

With respect to item (f), involving the right not to be detained for over 12 hours on a domestic assault charge without an official determination that the arrestee is a danger to the alleged victim, it first bears noting that only Shem Malmquist was arrested for domestic assault – Meredith Malmquist was arrested for simple assault. The statute that governs this situation is

11

TENN. CODE ANN. § 40-11-150(h)(1), which provides that

> Any offender arrested for the offense of stalking, aggravated stalking or especially aggravated stalking, as defined in § 39-17-315, or any criminal offense defined in title 39, chapter 13, in which the alleged victim is a victim as defined in § 36-3-601, shall not be released within twelve (12) hours of arrest if the magistrate or other official duly authorized to release the offender finds that the offender is a threat to the alleged victim. The official may, however, release the accused in less than twelve (12) hours if the official determines that sufficient time has or will have elapsed for the victim to be protected.

This statute addresses the circumstances in which a magistrate may or must detain an arrestee out of concern for the safety of the alleged victim, regardless of other bail considerations. It does not impose an upper limit on the duration of detention of domestic assault arrestees who are *not* found to be threats to their victims, except perhaps by negative implication. This is simply too strained a reading of the statutory language, particularly as it is offered by plaintiffs to support a federal constitutional claim for infringement of a state-created liberty interest.

Plaintiffs find their greatest purchase with item (c), the asserted right of persons arrested on out-of-county warrants "to be admitted to bail in the county of arrest in the same manner as anyone else arrested in that county." (Docket Entry No. 1 ¶ 41). Under TENN. CODE ANN. § 40-11-147, a defendant who is arrested pursuant to a warrant issued in a different county "for an offense for which the maximum punishment is imprisonment for ten (10) years or less is entitled to be admitted to bail in the county of arrest by the same officials and in the same manner as if arrested in the county issuing the warrant."[5] It is presumably within the context of defendant's noncompliance with this statute, and the attendant delay resulting from plaintiffs' transport to Davidson County, that plaintiffs claim, in item (g) above, denial by Germantown of their right to

---

[5] Tennessee Rule of Criminal Procedure 4(d) — which the Court referenced in its November 29, 2011 Memorandum (Docket Entry No. 39 at 16 n.2) — is identical to Tenn. Code. Ann. § 40-11-147.

12

have bail set without unreasonable delay. (Docket Entry No. 1 at ¶ 45)

As defendant notes in its reply to plaintiff's response to defendant's motion to dismiss, the Court briefly addressed this provision in its Memorandum granting defendant Metro's motion to dismiss. (Docket Entry No. 39 at 16 n.2). Specifically, the Court concluded that a state-created "right" to be admitted to bail in the county of arrest is a matter of procedure and does not "give rise to any protected liberty interest implicating plaintiff's [sic] federal due process rights." (Id.) The parties' subsequent filings have not changed the Court's opinion on this matter. However, because this statement was short and, as it related to Metro's motion, dicta, and because the precise meaning of TENN. CODE. ANN. § 40-11-147 is central to the current motion to dismiss, further explanation of the Court's conclusion is warranted.

There is no real dispute that TENN. CODE. ANN. § 40-11-147, by its own terms, satisfies the first prong of McMurray. The statute sets forth a substantive predicate — arresting a suspect for an offense that carries a maximum punishment of less than 10 years — and then uses the explicitly mandatory term "entitled" to describe the arrestee's "right" to be admitted to bail in the county of arrest.

The second prong of McMurray, whether or not the statute mandates a particular *substantive* outcome, is a much closer question. At the outset, it is not clear whether the law really mandates a particular outcome at all. The Court notes that § 40-11-147 and Tennessee Rule of Criminal Procedure 4(d), which are identical, are arguably in tension with several other provisions of Tennessee law. Tennessee Rule of Criminal Procedure 5(a)(1), for example, establishes that

> Any person arrested — except upon a capias pursuant to an indictment or
> presentment — shall be taken without unnecessary delay before the nearest

13

> appropriate magistrate of: (A) the county *from which the arrest warrant issued*; or (B) the county in which the alleged offense occurred if the arrest was made without a warrant[.]

(Emphasis supplied).  Since Shem and Meredith Malmquist were arrested pursuant to a Davidson County warrant, subsection (a)(1)(B) is clearly inapplicable.  However, the language of Rule 5(a)(1)(A) would appear to have required that they be taken without unnecessary delay to a magistrate in Davidson County for an initial appearance.

> Similarly, TENN. CODE ANN. § 40-11-106(a) states, in pertinent part, that

> If bail has been set, any sheriff, any magistrate or other officer having authority to admit to bail in the county where the defendant is arrested, confined or legally surrendered *may* take bail in accordance with the provisions of §§ 40-11-101 – 40-11-144 and release the defendant to appear as directed by the officer setting bail.

(Emphasis supplied).  The language here, particularly the use of the word "may," suggests that authorities in the county of arrest have at least some discretion over whether or not to admit the arrestee to bail in cases where the amount of bail appears on the face of the warrant.  Neither this language, nor the language of Tennessee Rule of Criminal Procedure 5(a) weigh definitively against the existence of a state-created liberty interest in being admitted to bail in the county of arrest.  But they do undermine the argument that state law mandates a particular substantive outcome on the issue of where bail is to be taken.[6]

---

[6] The Court also notes that David Louis Raybin, an authority on Tennessee criminal procedure, has noted that "[t]he purpose of the inter-county arrest rule is to reduce the transportation burden on a defendant charged with a 'minor' offense in a county different than his residence," but that "no remedy for a violation of this rule is stated in the criminal rules."  9 DAVID LOUIS RAYBIN, TENNESSEE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 3.3 (2010).  Mr. Raybin goes on to speculate that "it could be argued that the failure to bring a defendant before the appropriate magistrate would be similar to the failure to bring a defendant before any magistrate under Rule 5(a)," which "will result in release from custody of an accused who is still in jail when the issue is raised, but ... will not invalidate the prosecution or the warrant."  Id.  Such uncertainty would appear to militate against a finding that the statute mandates a substantive outcome.

14

Second, and more importantly, courts in this circuit have defined the world of "substantive" outcomes very narrowly. For example, in <u>Harrill v. Blount County, Tennessee</u>, a woman claimed that a police booking officer violated her due process rights by not allowing her to make a phone call to her father. 55 F.3d 1123, 1125 (6th Cir. 1995). The woman pointed to TENN. CODE. ANN. § 40-7-106(b) as the source of her liberty interest, noting the requirement that "[n]o person under arrest . . . shall have his name entered on any . . . record until such time that the person has successfully completed a telephone call to an attorney, relative, minister, or any other person that he shall choose, without undue delay." The court concluded, despite the mandatory language, that the "right to make a phone call immediately upon arrest is not a recognized property right, nor is it a traditional liberty interest recognized by federal law." <u>Harrill</u>, 55 F.3d at 1125.

More recently, in <u>Tate v. Hartsville/Trousdale County</u>, this Court concluded that a sheriff's decision to detain a suspect for twelve hours to give him time to "cool down" did not violate any protected liberty interest. 2010 WL 4054141, No. 3:09-0201, at *8 (M.D. Tenn. Oct. 14, 2008). The Court conceded that the sheriff's conduct probably ran afoul of TENN. CODE. ANN. § 40-11-150(h)(1)-(2), which permits police to hold a domestic assault suspect for up to twelve hours *if* the magistrate or other duly authorized official finds that the offender is a risk to the alleged victim. The officials in <u>Tate</u> conducted no formal hearing and entered no formal opinion, despite the law's requirement that "written findings must be attached to the warrant and . . . be preserved as a permanent part of the record." <u>Id.</u> § 40-11-150(h)(2). Nevertheless, the Court concluded that "a 12-hour delay in releasing Plaintiff in this case did not amount to a constitutional deprivation." <u>Tate</u>, 2010 WL 4054141 at *8; <u>see</u> <u>also</u> <u>Hopkins v. Bradley County</u>,

15

338 S.W. 3d 529, 538-39 (Tenn. Ct. App. 2010) (citing extensively to <u>Tate</u> and similarly

concluding that a plaintiff's due process rights were not violated when he was wrongfully held

for 12 hours).

Courts in other circuits have reached similar conclusions. The Second Circuit, in <u>Watson</u>

<u>v. City of New York</u>, explictly held that "a state rule of criminal procedure . . . does not create a

liberty interest that is entitled to protection under the federal Constitution." 92 F.3d 31, 37-38

(2d Cir. 1996). In that case, a detainee argued that he had a liberty interest in being arraigned

within 24 hours, based on the language of a New York statute, and subsequent interpretation by

New York courts. <u>Id.</u> at 38. The Second Circuit agreed with the detainee that the New York

statute used explicit, mandatory language, but it ultimately concluded that the question of

whether arraignment was sufficiently "prompt" to satisfy the U.S. Constitution should be

answered without reference to any state rule of procedure.

Analogously, the district court in <u>Barcomb v. Sabo</u>, 2011 WL 1770795 (N.D.N.Y. May 9,

2011), addressed a claim of unreasonable seizure under the Fourth Amendment based on law

enforcement's insistence on returning plaintiff Barcomb to the county from which his arrest

warrant issued, which was a seven-hour, 350-mile drive from the county of arrest, after which

Barcomb was held overnight in jail before being arraigned and released the following day, and

was subsequently wished "good luck on getting home" by the arresting officer. 2011 WL

1770795, at *2. As grounds for his claim of unreasonableness, Barcomb cited a New York

statute, N.Y. CRIM. PROC. LAW § 120.90(3), which establishes an arrestee's right, when arrested

on a non-felony warrant in a county other than where the warrant is returnable or one adjoining

it, "to appear before a local criminal court of the county of arrest for the purpose of being

16

released on his own recognizance or having bail fixed." Id. at *9 & n.8. Citing the Second

Circuit's decision in Watson v. City of New York, the district court found that "[w]hile

Barcomb may have been deprived of his state procedural right to be arraigned locally, that

deprivation alone does not entitle him to relief under the Fourth Amendment." Id.

Here, TENN. CODE ANN. § 40-11-147 provides for the arrestee's entitlement to be

admitted to bail in the county of arrest to the same extent as he would be entitled to be admitted

to bail in the county from which the arrest warrant issued. It is the right to be admitted to bail,

and thus freed from confinement, that is the underlying "traditional liberty interest recognized by

federal law." Harrill, 55 F.3d at 1125. This interest is presupposed by the operative language of

§ 40-11-147 describing the arrestee's procedural right regarding where (among the two counties)

he can be admitted to bail. "While the states are, of course, free to enact laws that are more

protective of individual rights than the United States Constitution, a mere violation of such a

state law will not establish a proper claim under § 1983." Pyles v. Raisor, 60 F.3d 1211, 1215

(6th Cir. 1995). Plaintiffs here were admitted to bail in Davidson County without unreasonable

delay, as discussed *supra* at pp. 7-9.[7] That they were denied the operation of a procedural device

that would in theory have saved them time and money (not to mention the certain savings of

those tax dollars expended for their transport by the Davidson County authorities) is unfortunate,

but is not a matter of federal constitutional concern.

In sum, this Court holds that the state statute's provision for admission to bail in the

---

[7]While plaintiffs claim that "any delay in setting bail ... for the purpose of having another county pick up the arrestee, without more, is unreasonable and therefore a violation of the due process clause of the 14th Amendment and excessive under the 8th Amendment" (Docket Entry No. 1 at ¶ 45), it is clear that violations of state law do not drive the determination of reasonableness under the Federal Constitution. See Virginia v. Moore, 553 U.S. 164, 171-73 (2008).

17

county of arrest – an apparent exception, for arrestees charged with relatively minor offenses, to the general rule of return to the county which issued the warrant – does not require a substantive outcome so as to create a liberty interest protected from state infringement without due process of law.

### III.  Conclusion

In light of the foregoing, defendant Germantown's motion to dismiss will be GRANTED.  An appropriate Order will enter.

ENTERED this 18th day of July, 2012.

 s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE

18